IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PHYSICIANS WELLNESS GROUP, INC, ET AL., *Plaintiffs*, | § § § § | |
| v. | § § | CIVIL ACTION NO. 4:22-CV-597-BJ |
| MOONI USA, LLC, ET AL., *Defendants*. | § § § | |

**ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS**

Pending before the Court is a Joint Motion to Dismiss ("Joint Motion to Dismiss") [doc. 167] by Defendants Mooni USA, LLC ("Mooni USA"), Jake Michel ("Michel"), and The Perry Law Firm APLC ("PLF") (collectively "Defendants") on February 9, 2025.  Having carefully considered the motion, response, reply, and applicable law, the Court concludes that Defendants' motion should be **DENIED.**

## I.    BACKGROUND

Plaintiffs Physicians Wellness Group, Inc. ("Physicians Wellness") and Zareou Manufacturing USA, Inc. ("Zareou") (collectively "Plaintiffs") initially filed this civil action on June 3, 2022, in a Tarrant County District Court, asserting claims against Defendants for common law fraud, negligent misrepresentation, and conspiracy to commit fraud.  (Index of Attachments to Notice of Removal ("Rem. App.") [doc. 1-2] at 4-13.)  On July 13, 2022, Michel removed the case to this Court.  (Defendant Jake Michel's Notice of Removal ("Not. of Rem.") [doc. 1] at 1-5.)  On January 20, 2023, Plaintiffs filed a Second Amended Complaint [doc. 18], which is the live pleading before this Court.  In the Second Amended Complaint, Plaintiffs assert claims against Defendants for (1) "Common Law Fraud/Fraudulent Inducement," (2) negligent

misrepresentation, and (3) "Fraudulent Concealment/Fraudulent Non-Disclosure."  (Plaintiffs' Second Amended Complaint ("Pls.' Sec. Am. Compl.") [doc. 18] at  13-17.)

On February 3, 2023, Mooni USA and Michel filed motions to dismiss [doc. 21, 23]. Separately, on May 8, 2023, PLF filed a motion to dismiss [doc. 42].  On June 16, 2023, the Court partially granted Michel and Mooni USA's motions to dismiss, dismissing Plaintiffs' "Fraudulent Concealment/Fraudulent Non-Disclosure" claim.  (Order Partially Granting Motions to Dismiss [doc. 48] at 18.)  Two weeks later, Michel and Mooni USA jointly filed an Answer to Plaintiffs' Second Amended Complaint [doc. 49].  On September 7, 2023, the Court partially granted the PLF's motion to dismiss, again dismissing Plaintiffs' "Fraudulent Concealment/Fraudulent Non-Disclosure" claim.  (Order Partially Granting and Partially Denying Defendant The Perry Law Firm's Motion to Dismiss [doc. 56] at 10.)  Thereafter, on November 10, 2023, PLF filed an Answer to Plaintiffs' Second Amended Complaint [doc. 64].

On February 9, 2025, Defendants filed their above-referenced Joint Motion to Dismiss. The next day, a jury trial began on Plaintiffs' remaining claims [doc. 170].  On February 12, 2025, the jury returned a verdict in favor of Plaintiffs.  (Docs. 171, 172.). In their Joint Motion to Dismiss, Defendants argue, *inter alia*, that the Court should dismiss this case "because Plaintiffs do not exist, [they are] not proper parties to bring claims in litigation, lack standing, and the Court[,] therefore[,] lacks jurisdiction over Plaintiffs' purported claims."  (Defendants' Joint Motion to Dismiss ("Defs.' Joint Mot. to Dismiss") [doc. 167] at 1.)  Defendants contend that Plaintiffs' lack standing to bring this suit because Zareou and Physicians Wellness independently forfeited their corporate charters and privileges and, thus, neither has standing to bring its claims.  (*Id.* at 2-3.) In response, Plaintiffs assert, *inter alia*, that even if Zareou and Physicians Wellness had forfeited

their charters, they still have standing and may continue to pursue this suit.  (Plaintiffs' Response to Defendants' Joint Motion to Dismiss ("Pls.' Resp.") [doc. 181] at 2, 5-6.)

## II.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by the Constitution and statute, which is not expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  Cases are presumed to fall outside this limited jurisdiction absent a showing to the contrary by the party asserting that the court has jurisdiction.  *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (noting that federal courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum").  The party asserting jurisdiction, in this case Plaintiffs, must establish subject matter jurisdiction by a preponderance of the evidence.  *See Sentry Ins. v. Morgan*, 101 F.4th 396, 398 (5th Cir. 2024) (per curiam); *see also Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 898 n.1 (N.D. Tex. Jan. 30, 2020) (finding that "to prove a fact or claim by a preponderance of the evidence, a party must prove that it is more likely than not that its version of the facts is true") (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983)).

In their Joint Motion to Dismiss, Defendants do not identify the Federal Rule of Civil Procedure ("Rule") under which they bring this motion.  Furthermore, their arguments appear to conflate standing and capacity to sue, which fall under different legal standards.  "'The distinction between standing and capacity is important because objections to capacity may be waived if not timely asserted, but objections to standing are jurisdictional in nature and can be raised at any time.'" *Linsan, Inc. v. Mercantile Thrift Stores, Inc.*, No. 4:20-CV-04343, 2023 WL 3698551, at *1 (S.D. Tex. Mar. 2, 2023) (quoting *Bankston v. Burch*, 27 F.3d 164, 167 (5th Cir. 1994)).  Because

a plaintiff must have both standing and capacity, the Court shall address each below.  *See Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 775 (Tex. 2020) ("Both capacity and standing are necessary to bring a lawsuit.").

### III.   DISCUSSION

#### A.   <u>Standing</u>

"Article III standing is the only kind of standing required before a federal district court can exercise subject matter jurisdiction."  *Abraugh v. Altimus*, 26 F.4th 298, 303 (5th Cir. 2022) (noting that the Fifth Circuit has continuously held that "[s]tanding in federal court is determined *entirely by Article III* and depends in no degree on whether standing exists under state law") (internal quotation marks and citations omitted) (emphasis in original); *see Guarantee Co. of N. Am. USA v. Housing Land Dev., Corp.*, 4:23-CV-01456, 2024 WL 3431339, at *5 (S.D. Tex. May 31, 2024) ("In federal courts, 'standing' refers to the limits of Article III 'case or controversy' jurisdiction.") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)), *R. & R. adopted*, 2024 WL 3581978 (S.D. Tex. June 30, 2024).  A plaintiff has standing to sue if he establishes "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of[,] and (3) a likelihood that the injury will be redressed by a favorable decision."  *Burnett Specialists v. Cowen*, 140 F.4th 686, 693 (5th Cir. 2025) (internal quotation marks and footnote citations omitted); *see also D'Arcangelo v. Funded Trader, LLC*, No. 1:23-CV-01472-DAE, 2025 WL 892974, at *5 (W.D. Tex. Feb. 18, 2025) (finding that "Plaintiff has sufficiently alleged all three elements required to establish Article III standing: injury in fact, traceability, and redressability") (citing *Lujan v. Defenders of Wildlife*, 590 U.S. 555, 560-61 (1992)), *R. & R. adopted*, 2025 WL 880257 (W.D. Tex. Mar. 21, 2025).  "[S]tanding ensures that the plaintiff has a personal stake in the

outcome of the case." *Chemguard Ltd. v. Dynax Corp.*, No. 4:09-CV-524-Y, 2010 WL 11619571, at *2 (N.D. Tex. Apr. 1, 2010) (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

Rule 12(b)(1) governs motions challenging a court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "When a defendant makes a factual attack on a court's subject matter jurisdiction, the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."[1] *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012) (internal quotation marks and citation omitted); *see Fruge v. Nat'l Flood Ins. Program*, No. 2:22-CV-01337, 2022 WL 3703861, at *2 (W.D. La. Aug. 26, 2022) ("Where the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's case, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "no presumption attach[es] to the plaintiff's allegations or obligation that disputed facts be construed in his favor.") (internal quotation marks and citations omitted).

In this case, Plaintiffs have sufficiently alleged the elements of Article III standing as each independently alleges that it has suffered damages because of Defendants' alleged unlawful actions and an award of damages would remedy the loss and harm they suffered from Defendants' actions. (Pls.' Sec. Am. Compl. at 2-18.)  In their Joint Motion to Dismiss, Defendants' arguments challenging Plaintiffs' "standing" do not address the Article III elements or any alleged defects in

---

[1] A defendant may raise either a facial or factual challenge to the court's jurisdiction. *See MacKenzie v. Castro*, No. 3:15-CV-0752-D, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016). "When a party files a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial," because the party is simply asserting that the allegations contained in the complaint, even if true, are insufficient to provide for the court's jurisdiction. *Id.* (citation omitted).  In contrast, 12(b)(1) motions filed with evidence, whether that be affidavits, testimony, or other evidentiary materials, amount to a factual attack. *Id.*  Unlike with a facial attack, a complaint's allegations under a factual attack receive no presumption of truth. *See Mewa Martinez v. Bryson*, No. 3:20-CV-1840-B, 2021 WL 260452, at *2 (N.D. Tex. Jan. 26, 2021) (finding plaintiff "enjoys no presumption of truthfulness" where there was a factual challenge to jurisdiction) (citing *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981)).  With a factual attack, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  Here, Defendants attach various documents to their Motion to Dismiss, which amounts to a factual challenge to this Court's jurisdiction.  (*See* Defs.' Joint Mot. to Dismiss at 5-10.)

Plaintiffs' pleading of such elements. Instead, as stated above, Defendants argue, *inter alia*, that Plaintiffs lack standing because they have been stripped of their corporate charters and privileges. (Defs.' Joint Mot. to Dismiss at 2-4.) However, this argument, as further explained below, is better characterized as a challenge to Plaintiffs' capacity to sue. Because Plaintiffs have standing, the Court has subject matter jurisdiction over Plaintiffs' claims.

### B. Capacity to Sue

As stated above, a plaintiff must have both capacity and standing to bring a lawsuit. *See Pike*, 610 S.W.3d at 775 (Tex. 2020); *see also Guarantee Co. of N. Am. USA*, 2024 WL 3431339, at *6 ("Because the lack of capacity *or* standing would independently require dismissal, . . . absence of either is fatal.") (internal citations omitted). Both elements are necessary; however, "unlike standing, a party's lack of capacity is an affirmative defense and does not deprive a court of subject matter jurisdiction." *Chaney v. East Central Indep. Sch. Dist.*, SA-21-CV-01082-FB, 2022 WL 1540592, at *3 (W.D. Tex. May 16, 2022) (citation omitted), *R. & R. adopted*, 2022 WL 22835373 (W.D. Tex. June 15, 2022).

It has long been recognized that Texas courts have had difficulty in differentiating between the doctrines of standing and capacity. *See Robinson v. Ashland, Inc.*, No. 1:24-CV-97, 2024 WL 5158429, at *8 (E.D. Tex. Dec. 18, 2024) (collecting cases); *see also Guarantee Co. of N. Am. USA*, 2024 WL 3431339, at *5 ("While often confused, the terms 'standing' and 'capacity' generally refer to separate concepts.") (citing *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 163 n.7 (5th Cir. 2016)). However, the distinction between these two concepts is significant as capacity may be waived; thus, a party wishing to raise it must do so properly and timely or risk forfeiture. *Linsan, Inc.*, 2023 WL 3698551, at *1. "'A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has capacity when it has legal

authority to act, regardless of whether it has a justiciable interest in the controversy.'" *Id.* (quoting

*Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996)); *see*

*Chemguard Ltd.*, 2010 WL 11619571, at *2.

In other words, capacity concerns whether a party has the "legal authority to go into court

to prosecute or defend a suit." *El T. Mexican Restaurants, Inc. v. Bacon*, 921 S.W.2d 247, 249-50

(Tex. App.—Houston [1st Dist.] 1995, writ denied) (citations omitted); *see Hofrock v. Fed. Nat'l*

*Mortg. Assoc.*, No. A-13-CV-1013 LY, 2014 WL 12586366, at *5 (W.D. Tex. Mar. 18, 2014)

("Capacity refers to a party's ability to sue and be sued in court.") (citation omitted), *R. & R.*

*adopted*, 2014 WL 12586757 (W.D. Tex. May 9, 2014).  A party's capacity to sue is generally

"conceived of as a procedural issue dealing with the personal qualifications of a party to litigate

and typically is determined without regard to the particular claim or defense being asserted."

*Chemguard Ltd.*, 2010 WL 11619571, at *2 (internal quotation marks and citation omitted).  The

burden rests with Defendants to challenge Plaintiffs' capacity to bring suit.  *See Johnston v. Dexel*,

373 F. Supp. 3d 764,783 (S.D. Tex. 2019).  "Capacity to sue is a defense, and the federal rules

require not only that the defendant raise issues of capacity, but he must do so by 'specific negative

averment.'"[2]  *FDIC v. Calhoun*, 34 F.3d 1291, 1299 (5th Cir. 1994) (quoting Fed. R. Civ. P. 9(a));

---

[2] "The defense of lack of capacity to be sued is properly brought as a 12(b)(6) motion." *Signum, LLC v. Nature's Lawn Care*, No. 6:23-CV-00202-ADA-JCM, 2025 WL 714104, at *2 (W.D. Tex. Jan. 30, 2025) (citation omitted); *see also Formcrete Co., Inc. v. NuRock Const., LLC*, No. 4:07cv290, 2007 WL 2746812, at *1 (E.D. Tex. Sept. 19, 2007) ("A challenge to a plaintiff's lack of capacity to sue . . . may be brought as a Rule 12(b)(6) motion."); *Robinson*, 2024 WL 5158429, at *9 (noting that "[a]lthough the Fifth Circuit has not articulated the proper vehicle for bringing a motion contesting capacity, it implicitly has approved 12(b) motions arguing lack of capacity") (internal quotation marks and citations omitted) (collecting cases).  "To survive a 12(b)(6) motion to dismiss, a plaintiff must show, after adequately stating his claim, that it may be supported by some set of facts consistent with the allegations in the complaint." *Formcrete, Co., Inc.*, 2007 WL 2746812, at *2 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007)).  It is well-established and "clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matter of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).  While Defendants fail to identify whether they are raising their lack of capacity argument as a 12(b)(6) motion, the Court shall treat the motion as such for evaluating its merits.  The Court also takes judicial notice of the printouts from the Texas Secretary of State charter forfeiture notices for Zareou and Physicians Wellness as well as the printout from the State of Delaware reflecting the corporate status of Physicians Wellness, which Defendants attach to their motion. *See* Fed. R. Evid. 201.

*see also Dallas Fallen Officer Found. v. Frazier*, No. 4:18-CV-00481, 2019 WL 4573639, at *2 (E.D. Tex. Sept. 20, 2019).  A party that fails to sufficiently "plead lack of capacity waives the right to object."  *Ralston Oil & Gas Co. v. Gensco, Inc.*, 706 F.2d 685, 692 (5th Cir. 1983); *see Linsan, Inc.*, 2023 WL 3698551, at *1 (finding that Defendant waived its challenge to Plaintiff's capacity by raising it for the first time in a motion for summary judgment rather than its answer).

A corporation's capacity to bring suit is determined by the law of the state under which it was organized.  *See* Fed. R. Civ. P. 17(b)(2).  "As a general rule, corporations whose charters have been forfeited and not reinstated lack capacity to sue or defend themselves in Texas courts."  *Anemelu v. Iraheta*, No. 14-19-00018-CV, 2020 WL 3719666, at *2 (Tex. App.—Houston [14th Dist.] July 7, 2020, no pet.) (citation omitted); *see also NexBank, SSB v. Bank Midwest, N.A.*, No. 3:12-CV-1882-D, 2012 WL 4321750, at *2 (N.D. Tex. Sept. 12, 2012) ("If a corporation's rights are forfeited, it cannot sue or defend in a Texas court or a federal court sitting in diversity.") (citing Tex. Tax Code § 171.252 and *Robinette v. Merrill Lynch, Pierce, Fenner & Smith*, No. Civ.A.3:96-CV-2923-D, 2004 WL 789870, at *2 n.4 (N.D. Tex. Apr. 12, 2004)).  This rule applies equally to foreign and domestic corporations.  *See* Tex. Tax Code Ann. §§ 171.251 (refers generally to a "corporation"), 171.2515.  A challenge to a corporation's ability to sue based on its status or forfeiture of privileges goes to its capacity to sue, not its standing.  *See Seghers v. El Bizri*, 513 F. Supp. 2d 694, 700 (N.D. Tex. 2007) (clarifying that Defendants' argument that one Plaintiff "lacks standing to sue because its corporate status was listed as 'cancelled' and it became 'inactive'" is "more aptly defined as a challenge to the Plaintiff's capacity to sue") (citation omitted); *see also Hofrock*, 2014 WL 12586366, at *5 (holding Plaintiff's argument—that Nationstar, as World Capital's assignee, could not sue in Texas because World Capital lost its authority to do business there—concerned Nationstar's capacity to sue, not standing).

Here, Defendants are plainly challenging the capacity of Zareou and Physicians Wellness to sue based on the forfeiture of their corporate charters and privileges.  However, the problem with Defendants' challenge is that it was raised for the first time in their motion on the eve of trial.[3] *See Harris v. New Orleans Police Dept.*, No. 11-752, 2013 WL 1335613, at *4 (E.D. La. Mar. 29, 2013) ("a challenge to capacity is untimely [ ] when raised on the eve of, during, or after trial") (collecting cases), *affirmed, Harris v. Serpas*, 745 F.3d 767 (5th Cir. 2014); *see also Dallas Fallen Officer Found.*, 2019 WL 4573639, at *3 (finding that Defendants' actions of sitting on the knowledge that there could be a capacity issue "until the eve of trial is the epitome of untimely"). Defendants allege, *inter alia*, that Physicians Wellness forfeited its corporate privileges in Texas in 2017 and, thus, would not have had the capacity to bring this suit in 2022.  (Defs.' Joint Mot. to Dismiss at 3.)  But Defendants failed to raise either Plaintiffs' lack of capacity to sue at the first opportunity in their separate motions to dismiss [docs. 20, 23, 42] and answers to Plaintiffs' Second Amended Complaint [docs. 49, 64].  Consequently, Defendants waived their objection to Plaintiffs' capacity to sue by waiting approximately three years to assert it.[4]  Nonetheless, even if Defendants had not waived their challenge to Plaintiffs' capacity to sue, for the reasons stated below, the Court would still deny their motion at this time.

Whether Zareou and Physicians Wellness have capacity to bring suit is determined by the law under which each is organized.  *See* Fed. R. Civ. P. 17(b)(2).  Because they are organized under different states the Court will address them separately.

---

[3] The Court notes Plaintiffs failed to raise any waiver arguments in their response to Defendants' motion. Nonetheless, before addressing the parties' arguments, the Court will briefly discuss this issue.

[4] The Court notes that Physicians Wellness lost its corporate privileges on January 27, 2017 and Zareou lost its corporate privileges on August 16, 2024.  (Defs.' Joint Mot. to Dismiss at 2.)  Thus, while Defendants had the ability to raise a lack of capacity argument as to Physicians Wellness three years ago at the time of filing, they would not have been able to raise this argument as to Zareou until a year ago.

### 1.    Zareou's Capacity to Sue

Zareou is a Texas corporation.  (Pls.' Sec. Am. Compl. at 2.)  As relevant here, under Texas law, a corporation may forfeit its corporate charter and privileges if it fails to timely pay franchise taxes.   *See* Tex. Tax Code Ann. §§ 171.251, 171.309.   Once "the corporate privileges of a corporation are forfeited under this subchapter . . . the corporation shall be denied the right to sue or defend in a court of this state."  *Id.* § 171.252; *see Anemelu*, 2020 WL 3719666, at *2.  Unless the forfeiture is set aside, a domestic corporation whose charter has been forfeited under the Texas Tax Code is referred to as a "terminated filing entity."  *See* Tex. Bus. Orgs. Code Ann. §§ 1.002(22), 1101(4)(B),  11.001(5); Tex. Tax  Code Ann.  §§  171.302, 171.309.    While referred to as a "terminated filing entity," "[n]either the forfeiture of corporate privileges by the comptroller nor the forfeiture of a corporation's charter by the secretary of state extinguishes the corporation as an entity."  *Hinkle v. Adams*, 74 S.W.3d 189, 193 (Tex. App.—Texarkana 2002, no pet.) (citation omitted).

Here, it is undisputed that Zareou had its charter revoked on August 16, 2024, and, therefore, is a "terminated filing entity" within the meaning of the Texas Business Organizations Code ("TBOC").  (Defs.' Joint Mot. to Dismiss at 2; Pls.' Resp. at 3.)  However, as recognized by Plaintiffs, a "terminated filing entity" continues to exist for three years after its charter has been forfeited for the limited purpose, as relevant here, of "prosecuting or defending in the terminated filing entity's name an action or proceeding brought by or against the terminated entity" or "permitting the survival of an existing claim by or against the terminated filing entity."  Tex. Bus. Orgs. Code Ann. § 11.356(a)(1)-(2).  Furthermore, "a corporation that has capacity to file suit at the time it commences an action retains that capacity until the suit's conclusion."  *Mossler v. Nouri*, No. 03-08-00476-CV, 2010 WL 2133940, at *6 (Tex. App.—Austin May 27, 2010, pet. denied)

(citing *Tex. Clinical Labs, Inc. v. Leavitt*, 535 F.3d 397, 405 (5th Cir. 2008)).  Consequently, while Zareou's charter was revoked in August 2024, it retains the capacity to continue this suit, which was filed in July 2022.  In addition, it shall continue to exist under Texas law until August 2027.

### 2.    Physicians Wellness' Capacity to Sue

Physicians Wellness is a Delaware corporation.  (Pls.' Sec. Am. Compl. at 2.)  Under Delaware law, corporations generally "possess and may exercise all the powers and privileges granted by this chapter or by any other law or by its certificate of incorporation, together with any powers incidental thereto."  Del. Code Ann., tit. 8, § 121(a).  Similar to Texas corporations, a Delaware corporation may also lose its charter and powers if it fails to pay its franchise tax.  *Id.* § 510.  Additionally, as identified by the parties, Delaware has a survival statute which provides for corporations to continue to exist for three years after their dissolution for, as relevant here, "prosecuting and defending suits."  *See Id.* § 278.

In this case, Physicians Wellness had its Delaware charter forfeited no later than March 1, 2023,[5] and "Defendants admit that under Delaware law, [ ] [Physicians Wellness] is still within its three-year period to bring or defend claims in Delaware."  (Defendants' Reply to Plaintiffs' Response to Defendants' Joint Motion to Dismiss ("Defs.' Reply") [doc. 182] at 2.)  Thus, Physicians Wellness has the capacity to sue within the meaning of Rule 17(b).

While it is true that Physicians Wellness maintains the capacity to sue within the meaning of Rule 17(b)(2), the crux of Defendants' argument is that, because Physicians Wellness' "authority to transact business in Texas was forfeited . . . more than 8 years ago, it [(1)] lacks [capacity to sue in Texas] and [(2)] its claims have been extinguished by operation of law."[6]  (*Id.* at 1 (emphasis

---

[5] *See* Defs.' Joint Mot. to Dismiss at 2; Pls.' Resp. at 4.

[6] The Court notes that Defendants' second argument, known as the "claim extinguishment argument" was raised by Defendants for the first time in their reply.  (Defs.' Reply at 1.)

omitted).)  Physicians Wellness, a foreign corporation in Texas, forfeited its corporate privileges in Texas on January 27, 2017.  Thus, upon expiration of the three-year survival period in January 2020, two years before this suit was filed, it forfeited its charter and capacity to sue in Texas courts.  (Defs.' Joint Mot. to Dismiss at 2.)  Defendants first contend that, because Physicians Wellness would not have been able to sue or recover in a Texas court, it likewise would be unable to recover in this federal court.  (Defs.' Reply at 2.)  In response, Plaintiffs argue, *inter alia*, that Physicians Wellness' capacity to sue under Delaware law is the key consideration and that its "right to transact business is not relevant in the Court's consideration of standing to maintain this lawsuit."  (Pls.' Resp. at 5.)

Before addressing Defendants' first argument that Physicians Wellness lacks capacity to bring its claims here, the Court will briefly address Defendants' second "claim extinguishment" argument that Defendants raise for the first time in their reply.[7]  (Defs.' Reply at 1.)  Defendants claim that, since Physicians Wellness "had its registration **in Texas** forfeited more than three years ago, [] the claims it asserted in this lawsuit were indisputably extinguished by law."  (Defs.' Reply at 3 (emphasis in original).)  Under Texas law, "an existing claim by or against a terminated filing entity is extinguished unless an action or proceeding is brought on the claim not later than the third anniversary of the date of termination of the entity."[8]  Tex. Bus. Orgs. Code Ann. § 11.359(a).

---

[7] The Court notes that a reply brief is not an appropriate place to raise new arguments.  *See Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) ("Reply briefs cannot be used to raise new arguments.") (citing *Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008)); *see also Hardman v. Colvin*, 820 F.3d 142, 145 (5th Cir. 2016) (per curiam) (noting that courts "ordinarily do not consider claims raised for the first time in a reply brief") (internal quotation marks and citation omitted).  Nonetheless, the Court will discuss why Defendants' "claim extinguishment" argument lacks merit.

[8] The TBOC defines a "terminated entity" as a "*domestic entity* the existence of which has been: (A) terminated in a manner authorized or required by this code, unless the entity has been reinstated in the manner provided by this code; or (B) forfeited pursuant to the Tax Code unless the forfeiture has been set aside."  Tex. Bus. Orgs. Code Ann. § 11.001(4) (emphasis added).  A "terminated filing entity" refers to a "terminated entity that is a filing entity."  *Id.* § 11.001(5).  As relevant here, an "existing claim" refers to the claim of a corporation that either "existed before the entity's termination and is not barred by limitations" or the claim came to exist after the entity's termination but is brought within three years after its termination.  *Id.* § 11.001(3).

Even assuming that the claims Physicians Wellness raise in this suit can be characterized as "existing claims," it must still be shown that Physicians Wellness is a "terminated filing entity" within the meaning of TBOC.  This issue was addressed under a similar set of facts in *Armour Pipe Line Co. v. Sandel Energy, Inc.*, 546 S.W.3d 455 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

In *Armour*, the court had to determine whether Armour's claims were extinguished by operation of law when its certificate of authority was forfeited in 2003 and not reinstated within three years. *Id.* at 460.  There the court held that Armour, like Physicians Wellness, was a Delaware corporation and, thus, because it was not formed under the TBOC, it was "not a domestic entity as a matter of law," meaning that it likewise could not be a "terminated entity" or "terminated filing entity as a matter of law."  *Id.* at 461 (citing Tex. Bus. Orgs. Code Ann. §§ 11.001(4), 11.001(5), 1.102).  The court further found that, because Armour failed to meet the definition of a "terminated filing entity" within the meaning of section 11.359 of the TBOC, its claims were not extinguished by operation of law.  *Id.*  The *Armour* court also addressed any purported conflicts in meaning among provisions of the TBOC, explaining why Armour need not be treated as an entity within the meaning of section 11.359 and highlighting the *Armour* Defendants' failure to cite any authority applying section 11.359 to a non-Texas entity.  *Id.* at 464-65.  Finally, the court held that "[u]nder the unambiguous language of section 11.359 and the statutes relating to the definition of the term 'terminated filing entity' used in that statute, we conclude that as a matter of law section 11.359 cannot operate to terminate any claims of a foreign entity such as Armour."  *Id.* at 465.

---

The TBOC also differentiates between domestic and foreign entities based on the law the entity is organized under.  If an entity, like a corporation, is organized under Texas law or its internal affairs are governed by the TBOC, then the TBOC defines the entity to be a "domestic entity."  *Id.* § 1.002(18).  However, entities organized and governed by the laws of state other than Texas are defined as a "foreign entity."  *Id.* § 1.002(27).

The Court agrees with the *Armour* court's analysis. Therefore, the Court finds that Physicians Wellness, a Delaware corporation that operates and is organized under Delaware law, is a foreign corporation in Texas that fails to meet the definition of a "terminated filing entity" within the meaning of TBOC section 11.359; thus, its claims are not extinguished by operation of law.[9] *See* Tex. Bus. Orgs. Code Ann. §§ 1.002(18), 1.1002(28), 11.001(4), 11.001(5), 11.359(a). Defendants' reliance on *Construtodo S.A. de C.V. v. Conficasa Holdings, Inc.*, which they allege shows the application of section 11.359 to a foreign entity, is misplaced. *See* No. H-12-3026, 2014 WL 427114, at *6 (S.D. Tex. Jan. 31, 2014). The *Armour* court addressed *Construtodo* and clarified that *Construtodo* did not hold that Armour's claims, as a Delaware corporation, had been extinguished but, instead, "concluded it lacked jurisdiction without addressing the extinguishment issue." *Armour Pipe Line Co.*, 546 S.W.3d at 464 (citing *Construtodo S.A. de C.V.*, 2014 WL 427114 *5-6). Therefore, the Court finds that section 11.359 is inapplicable here and, consequently, Physicians Wellness' claims are not extinguished by operation of law. *See* Tex. Bus. Orgs. Code Ann. § 11.359.

While Physicians Wellness' claims would not be extinguished by operation of law, the Court agrees with Defendants that, at the time of filing, Physicians Wellness lacked the capacity to bring this suit in a *Texas* court. Rule 17(b)(2) indicates that Physicians Wellness has the general capacity to sue, but "Rule 17(b) has been effectively qualified to afford a foreign corporation relief in the federal court only if it has an enforceable remedy in the courts of the state in which the federal court is sitting." *Farris v. Sambo's Restaurants, Inc.*, 498 F. Supp. 143, 145 (N.D. Tex. 1980). Stated differently,

> [w]hile technically the corporation may have the capacity to sue in the federal court pursuant to Rule 17(b) it cannot recover where recovery would not be possible in the state court. Any valid state law closing its courts to a foreign corporation which

---

[9] Defendants agree that Physicians Wellness is a foreign entity. (Defs.' Reply at 2.)

is not qualified to do business in the state must, therefore be given effect in the federal courts of such state in a case based solely on diversity or alienage jurisdiction.

*Id.* (internal quotation marks and citation omitted); *see also Woods v. Interstate Realty Co.*, 337 U.S. 535, 537-38 (1949); *Angel v. Bullington*, 330 U.S. 183, 187 (1947) ("For purposes of diversity jurisdiction a federal court is, 'in effect only another court of the State.'") (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 108 (1945)).

When Physicians Wellness' corporate privileges were revoked in Texas on January 27, 2017, its access to the state's courts was foreclosed, remained closed at the time of filing, and continues to remain so now. Because Physicians Wellness would not be able to recover in state court, it likewise cannot recover in this Court sitting in diversity. However, that does not mean that these doors must remain closed.

Under Texas law, a corporation whose privileges and charter has been forfeited can have the forfeiture set aside if, as relevant here, it makes payment of any delinquent taxes. *See* Tex. Tax Code Ann. § 171.312. By meeting the requirements of section 171.312, the Secretary of State will "set aside" the forfeiture of a corporation's charter and, with that act, the Comptroller "shall revive" the privileges of the corporation. *Id.* §§ 171.312, 171.314. When this occurs, a corporation's privileges are revived not only prospectively but also retrospectively. *See Dalio Holdings I, LLC v. WCW Houston Properties, LLC*, No. 4:18-CV-01882, 2019 WL 13191545, at *2-3 (S.D. Tex. Sept. 30, 2019) ("Under Texas law, this reinstatement relates back to the time of the corporation's delinquency.") (finding that because Texas courts recognize reinstatement revives a corporation's previously "dead pleadings," a federal court must do the same) (citations omitted); *see also Sun Packing, Inc. v. XenaCare Holdings, Inc.*, 924 F. Supp. 2d 749, 752-53 (S.D. Tex. 2012) (holding that Plaintiff had capacity to sue despite having forfeited its corporate privileges at the time of

filing because once Plaintiff's charter was revived, its corporate privileges related back prior to the time of filing); *see also NexBank, SBB*, 2012 WL 4321750, at \*3 (collecting cases). This means that "once an entity recovers its charter by paying its delinquent taxes, the entity's right to sue or defend is revived, and the entity may sue or defend all causes of action, regardless of whether such causes of action arose before or during the time period of forfeiture." *Highline Innovation Invs. P'ship, LLC v. Biolert, Ltd.*, No. 4:21-CV-00615, 2022 WL 3354775, at \*5 (E.D. Tex. Aug. 12, 2022) (internal quotation marks and citation omitted). Because revival serves to reinstate all corporate privileges, courts treat such a finding "as if the disability never occurred." *Manning v. Enbridge Pipelines (E. Tex.) L.P.*, 345 S.W.3d 718, 723 (Tex. App. 2011, pet. denied) (internal quotation marks and citation omitted); *see Oden Metro Turfing, Inc. v. Cont'l Cas. Co.*, No. 12-1547, 2012 WL 5423704, at \*3 (W.D. La. Oct. 10, 2012) (highlighting how "the Texas State Civil Appellate Court [has] held that a reinstated corporation had capacity to maintain a lawsuit even though it filed prior to reinstatement of its corporate charter") (citing *Acme Color Art Printing Co., Inc. v. Brown*, 488 S.W.2d 507 (Tex. Civ. App. 1972)), *R. & R. adopted*, 2012 WL 5424616 (W.D. La. Nov. 1, 2012).

As relevant here, if Physicians Wellness' forfeiture were set aside, its privileges would be revived retroactive to 2017, the date of delinquency, and its capacity to maintain this suit would be restored. Had this suit not been removed, Physicians Wellness would have been given the opportunity to cure the defect in its capacity before having its claims dismissed. *See 1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 362 (Tex. App.—El Paso 2022, no pet.) (noting that "a defendant wishing to challenge a plaintiff's capacity to sue must do so by filing either a verified plea in abatement or a verified motion to abate, which allows the plaintiff an opportunity to cure any defect"); *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 853 n.7 (Tex. 2005)

(finding that when a defendant makes a proper challenge to capacity "the trial court should abate the case and give the plaintiff a reasonable time to cure any defect") (citations omitted); *see also M & M Constr. Co v. Great American Ins. Co.*, 747 S.W.2d 552, 555 (Tex. App.—Corpus Christi-Edinburg 1988, no writ) (holding that the trial court erred in dismissing the cause with prejudice where Plaintiff was not first given an opportunity to cure its lack of capacity by paying delinquent taxes, and that dismissal is appropriate only if Plaintiff refuses or is unable to cure its lack of capacity to sue).

In fact, Texas courts faced with a challenge to a plaintiff's capacity to sue favor abatement over dismissal. *See Cognata v. Down Hole Injection, Inc.*, 375 S.W.3d 370, 376 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (collecting cases). Some federal courts recognize this principle and provide a plaintiff with an opportunity to cure its lack of capacity to sue before dismissing a suit. *See Corp. Realty Assocs. v. Dun & Bradstreet*, No. A-16-CV-921-LY-ML, 2016 WL 10968671, at *4 (W.D. Tex. Sept. 28, 2016) (staying case to allow Plaintiff to register to do business in Texas to maintain its suit); *see also DHI Holdings, LP v. Deutsche Bank Nat'l Trust Co.*, No. H-24-1270, 2024 WL 3585674, at *3 (S.D. Tex. July 30, 2024) (granting a ninety day stay for Plaintiff to cure its lack of capacity after it forfeited the right to transact business in Texas); *Rangle v. Wellpath, LLC*, No. 5:23-CV-128-H, 2024 WL 4773311, at *9 (N.D. Tex. Nov. 13, 2024) (holding that "[b]ecause the estate had standing at the time of filing and the defect is one of procedural capacity, the Court pursuant to Federal Rule of Civil Procedure 17, stays the case for 21 days to allow the plaintiff the opportunity to cure the defect."). Because, as explained above, Physicians Wellness has standing to bring its claims and given the current posture of this case, the Court finds that it should be given a reasonable opportunity to cure its capacity.[10]

---

[10] The Court notes that the Texas Comptroller's website, which this Court takes judicial notice of, reflects Physicians Wellness' franchise tax account status and indicates that its right to transact business in Texas is "active."

## IV.   CONCLUSION

Based on the foregoing, it is **ORDERED** that Defendants' Joint Motion to Dismiss [doc. 167] is **DENIED**.

It is further **ORDERED** that Plaintiffs shall, **within twenty-one (21) days**, file a notice of Physicians Wellness' capacity to sue in Texas, indicating whether Physicians Wellness' corporate privileges and charter remain forfeited.  If Physicians Wellness fails to file this proof and does not revive its corporate privileges, the Court will dismiss all of Physicians Wellness' claims against Defendants.

SIGNED September 18, 2025.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

---

Comptroller.Texas.Gov,   https://comptroller/texas/gov/texas.gov/taxes/franchise/account-status/search/32058921837 (last visited Sept. 5, 2025).  Generally, "[c]ourts may take 'judicial notice of information posted on a government website." *Thompson ex rel. Neveah T. v. Martinez*, No. EP-24-CV-276-KC, 2025 WL 1779762, at \*21 n.5 (W.D. Tex. June 27, 2025) (citing *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 353 n.5 (5th Cir. 2011)).  However, Plaintiffs' response does not indicate whether Physicians Wellness has taken steps to reinstate its charter and privileges to cure the defects in its capacity.  Because its plausible that Physicians Wellness may have revived its corporate privileges in Texas by complying with section 171.312 of the Texas Tax Code at any time after Defendants filed their motion, the Court must ensure that Physicians Wellness, in fact, lacks capacity before dismissing its claims.  Allowing Physicians Wellness this opportunity will enable Plaintiffs to clarify Physicians Wellness' current capacity to sue in Texas.